**DATA EAST USA, INC., a California corporation, Plaintiff–Appellee,**

**v.**

**EPYX, INC., a California corporation, Defendant–Appellant.**

**No. 87–2294.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1988.

Decided Nov. 30, 1988.

H. Michael Brucker, Oakland, Cal., Steven M. Kipperman, San Francisco, Cal., for defendant-appellant.

Sheldon R. Meyer, Karen S. Smith, Fliesler, Dubb, Meyer & Lovejoy, San Francisco, Cal., William McLean, Thoits, Love, Hershberger & McLean, Palo Alto, Cal., for plaintiff-appellee.

Before BROWNING, HUG and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Plaintiff-appellee Data East USA, Inc., brought this action against defendant-appellant Epyx, Inc. for copyright, trademark, and trade dress infringement. The district court found a copyright infringement and issued a permanent injunction and impoundment. Epyx appeals the grant of the permanent injunction.

Epyx contends (1) the district court erred in granting the injunction because Epyx never had access to Data East's copyrighted work, (2) the district court erred in finding substantial similarity, and (3) the district court's injunction was impermissibly vague and overbroad. We reverse.

## I.  FACTS

Data East is a California corporation engaged in the design, manufacture, and sale of audio-visual works embodied in video games for coin-operated and home computer use.  In July 1984, Data East commenced distribution in Japan of an arcade game entitled "Karate Champ" ("Arcade # 1").  In September 1984, Data East commenced distribution in Japan and later in the United States and Europe of an updated version of "Karate Champ" ("Arcade # 2" or more generally as "arcade game").  Finally, on October 12, 1985, Data East commenced distribution in the United States of a home computer game version of "Karate Champ" ("home game").  Data East applied for and received audio-visual copyright certificates for each game.

In November of 1985, System III Software, Ltd., an English company, commenced distribution in England of a home computer game entitled "International Karate."  Epyx, a California corporation engaged in the development and distribution of audio-visual works for use on home computers, obtained a license agreement with System III and commenced distribution in the United States on April 30, 1986 of a Commodore-compatible version of "International Karate" under the name "World Karate Championship."

Each competing product, "Karate Champ" and "World Karate Championship," consists of the audio-visual depiction of a karate match or matches conducted by two combatants, one clad in a typical white outfit and the other in red.  Successive phases of combat are conducted against varying stationary background images depicting localities or geographic scenes.  The match is supervised by a referee who directs the beginning and end of each phase of combat and announces the winning combatant of each phase by means of a cartoon-style speech balloon.  Each game has a bonus round where the karate combatant breaks bricks and dodges objects.  Similarities also exist in the moves used by the combatants and the scoring method.

Data East alleged that the overall appearance, compilation, and sequence of the

audio-visual display of the video game "World Karate Championship" infringed its copyright for "Karate Champ" as embodied in the arcade and home versions of the video game. Data East also charged Epyx with trademark and trade dress infringement.

The district court found that except for the graphic quality of Epyx's expressions, part of the scoreboard, the referee's physical appearance, and minor particulars in the "bonus phases," Data East's and Epyx's games are qualitatively identical. The district court then held that Epyx's game infringes the copyright Data East has in "Karate Champ." The district court, however, found no trademark or trade dress infringement. Based upon its decision, the district court permanently restrained and enjoined Epyx from copying, preparing derivative works, distributing, performing, or displaying the copyrighted work in the "Karate Champ" video game, the "World Karate Championship" game, or the "International Karate" game. A recall of all Commodore computer games of "World Karate Championship" and "International Karate" was ordered. This appeal followed.

## II. DISCUSSION

A district court's determination of findings of fact is subject to the clearly erroneous standard of review. *McCulloch v. Price*, 823 F.2d 316, 318 (9th Cir.1987); *Anderson v. City of Bessemer City*, 470 U.S. 564, 572, 105 S.Ct. 1504, 1510, 84 L.Ed. 2d 518 (1985). The issues of access and substantial similarity are findings of fact reviewable for clear error. *McCulloch*, 823 F.2d at 318. Under the clearly erroneously standard of review, an appellate court must accept the lower court's findings of fact unless upon review the appellate court is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Dollar Rent a Car of*

*Washington, Inc. v. Travelers Indemnity Co.*, 774 F.2d 1371, 1374 (9th Cir.1985).

To establish copyright infringement, Data East must prove both ownership of a valid copyright and "copying" by Epyx of the copyrighted work. *Sid & Marty Krofft Television Products, Inc. v. Mc-Donald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977). It is undisputed that Data East is the registered copyright owner of the audio-visual work for each version of "Karate Champ." Thus we need only determine whether Epyx[1] copied "Karate Champ." This sounds simple and straightforward. It is not.

As in most infringement cases of this kind, no direct evidence was developed that System III Software or anybody else copied any version of Data East's product. There seldom is any direct evidence of copying in these matters. Therefore, copying may be established instead by circumstantial evidence of (1) the defendant's access to the copyrighted work prior to defendant's creation of its work, and (2) the substantial similarity of both the general ideas and expression between the copyrighted work and defendant's work. *Id.; Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987). In essence, the question of copying becomes a matter of reasonable inferences. Because we find no substantial similarity, we decline to address the issue of access.

### A. Sufficiency of Evidence

Preliminarily, we consider Epyx's contentions regarding the sufficiency of Data East's evidence. First, Epyx argues Data East's reliance on the contents of the audio-visual works of the home game is irrelevant for proof of substantial similarity because there was no finding of access to this version. We agree with this contention. We note, however, that the district court determined Data East's home game

---

1. In actuality, Data East contends that Mr. Cale, the creator of "International Karate," copied "Karate Champ." We refer generally, however, to Epyx, the defendant, as the "copier" since Epyx acquired a license agreement with System III to distribute a Commodore-compatible version of their game.

was an adaptation of its arcade game. The record contains substantial direct evidence that the works embodied in the arcade game and the home version are essentially similar. A finding of substantial similarity with the audio-visual unit present in the arcade game would, for the purposes of this case, support a finding of substantial similarity with the audio-visual representation of the home game.[2]

Second, Epyx raises the question of whether there was sufficient evidence presented at trial to establish the contents of plaintiff's "work" in the arcade game. As evidence of the arcade game's audio-visual work, plaintiff submitted still photographs. Plaintiff did not produce in court the arcade game itself or a video reproduction of the arcade game. Defendant contends there was nothing to prohibit plaintiff from putting the entire audio-visual work before the court and that the court should not have been deprived of having the entire work to view.

This case is distinguishable from *Seiler v. Lucas Film, Ltd.*, 808 F.2d 1316 (9th Cir.1986), *cert. denied*, — U.S. ——, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987), a case used by Epyx to support its argument that the court erred in not viewing the original version of the arcade game. In *Seiler*, the plaintiff tried to prove the contents of his copyrighted work with the use of "reconstructions" after alleging that no originals were in existence. The court ruled:

> The contents of Seiler's work are at issue. There can be no proof of 'substantial similarity' and thus of copyright infringement unless Seiler's works are juxtaposed with Lucas' and their contents compared. Since the contents are material and must be proved, Seiler must either produce the original or show that it is unavailable through no fault of his own.

*Id.* at 1319. To reach this result, the court applied the best evidence rule [Fed.R.Evid. 1004] and found Seiler had lost or destroyed the originals in bad faith. Thus, no secondary evidence was allowed. *Id.* The original in the instant case was not lost or destroyed. Photographs of the original rather than a video tape were used to represent the audio-visual work. No fraud was involved.[3]

The issue here, then, is whether sufficient evidence to support the district court's findings as to the contents of the arcade game's audio-visual work was present. Along with the photographs, testimony as to the content of the original was also presented. We find the still photographs which depict all images and all moves that occur when the game sequences through the various skill levels, along with testimony, to constitute sufficient evidence of the contents of the arcade game's audio-visual work to make a fair comparison with Epyx's game. The district court, therefore, did not commit clear error by determining that the pictures correctly reflect the contents of the original.

### B. Substantial Similarity

■ "To show that two works are substantially similar, plaintiff must demonstrate that the works are substantially similar in both *ideas* and *expression*." *Frybarger v. International Business Machines Corp.*, 812 F.2d 525, 529 (9th Cir. 1987). Although plaintiff must first show that the ideas are substantially similar, the ideas themselves are not protected by copyright and therefore, cannot be infringed. It is an axiom of copyright law that copyright protects only an author's expression of an idea, not the idea itself. *Mazer v. Stein*, 347 U.S. 201, 217–18, 74 S.Ct. 460, 470–71, 98 L.Ed. 630 (1954).[4] There is a

---

**2.** In view of the result in this case, it is unnecessary to address the contentions of Epyx that the trial judge confused "games" with "works" and that he essentially compared the wrong items.

**3.** Epyx has never objected to the admission of the photographs. Thus, this issue deals solely with sufficiency of the evidence, not with a "best evidence rule" argument. Plaintiff's argu-

ment relating to not raising evidentiary matters for the first time on appeal is therefore irrelevant.

**4.** This axiom is expressly codified in 17 U.S.C. § 102(b) (1982):

> "In no case does copyright protection for an original work of authorship extend to any idea ... [or] ... concept ... regardless of the

strong public policy corollary to this axiom permitting all to use freely ideas contained in a copyrightable work, so long as the protected expression itself is not appropriated. *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir.1984), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). Thus, to the extent the similarities between plaintiff's and defendant's works are confined to ideas and general concepts, these similarities are noninfringing.

The Ninth Circuit has developed a two-step test for the purposes of determining substantial similarity. *McCulloch*, 823 F.2d at 319; *Krofft*, 562 F.2d at 1164. First, an "extrinsic" test is used to determine whether two ideas are substantially similar. This is an objective test which rests upon specific criteria that can be listed and analyzed. *Krofft, id.* Second, an "intrinsic" test is used to compare forms of expression. This is a subjective test which depends on the response of the ordinary reasonable person. *Id.*

In applying the extrinsic test, the district court found that the *idea* expressed in plaintiff's game and in defendant's game is identical. The *idea* of the games was described by the court as follows:

> ". . . a martial arts karate combat game conducted between two combatants, and presided over by a referee, all of which are represented by visual images, and providing a method of scoring accomplished by full and half point scores for each player, and utilizing dots to depict full point scores and half point scores."

The district court further found that:

> "In each of the games, the phases of martial arts combat are conducted against still background images purporting to depict geographic or locality situses and located at the top of the screen as the game is viewed. The action of the combatants in each of the games takes place in the lower portion of the screen as the game is viewed, and is against a one color background in that portion of the screen as the game is viewed."

form in which it is described, explained, illus-

Once an idea is found to be similar or identical, as in this case, the second or intrinsic step is applied to determine whether similarity of the expression of the idea occurs. This exists when the "total concept and feel of the works" is substantially similar. *Aliotti v. R. Dakin & Co.*, 831 F.2d 898 (9th Cir.1987). Analytic dissection of the dissimilarities as opposed to the similarities is not appropriate under this test because it distracts a reasonable observer from a comparison of the total concept and feel of the works. *Id.*

The rule in the Ninth Circuit, however, is that "[n]o substantial similarity of expression will be found when 'the idea and its expression are ... inseparable,' given that 'protecting the expression in such circumstances would confer a monopoly of the *idea* upon the copyright owner.'" *Id.* (quoting *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)) (emphasis added); *see also Landsberg*, 736 F.2d at 489 (factual works); *See v. Durang*, 711 F.2d 141, 143 (9th Cir.1983) (scenes a faire doctrine); *Krofft*, 562 F.2d at 1168.

Nor can copyright protection be afforded to elements of expression that necessarily follow from an idea, or to "scenes a faire," i.e., expressions that are "as a practical matter, indispensable or at least standard in the treatment of a given [idea]." *Aliotti*, 831 F.2d at 901 (quoting *Atari, Inc. v. North American Phillips Consumer Elecs Corp.*, 672 F.2d 607, 616 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982)).

■ To determine whether similarities result from unprotectable expression, analytic dissection of *similarities* may be performed. If this demonstrates that all similarities in expression arise from use of common ideas, then no substantial similarity can be found. *Id.*

■ The district court performed what can be described as an analytic dissection of similarities in its findings of fact and stated:

trated, or embodied in such work."

Plaintiff's and defendant's games each encompass the idea of depicting the performance of karate martial arts combat in each of the following respects:

A.  Each game has fourteen moves.

B.  Each game has a two-player option.

C.  Each game has a one-player option.

D.  Each game has forward and backward somersault moves and about-face moves.

E.  Each game has a squatting reverse punch wherein the heel is not on the ground.

F.  Each game has an upper-lunge punch.

G.  Each game has a back-foot sweep.

H.  Each game has a jumping side-kick.

I.  Each game has low kick.

J.  Each game has a walk-backwards position.

K.  Each game has changing background scenes.

L.  Each game has 30–second countdown rounds.

M.  Each game uses one referee.

N.  In each game the referee says "begin," "stop," "white," "red," which is depicted by a cartoon-style speech balloon.

O.  Each game has a provision for 100 bonus points per remaining second.

The district court found that the visual depiction of karate matches is subject to the constraints inherent in the sport of karate itself. The number of combatants, the stance employed by the combatants, established and recognized moves and motions regularly employed in the sport of karate, the regulation of the match by at least one referee or judge, and the manner of scoring by points and half points are among the constraints inherent in the sport of karate. Because of these constraints, karate is not susceptible of a wholly fanciful presentation. Furthermore, the use of the Commodore computer for a karate game intended for home consumption is subject to various constraints inherent in the use of that computer. Among the constraints are the use of sprites,[5] and a somewhat limited access to color, together with limitations upon the use of multiple colors in one visual image.

The fifteen features listed by the court "encompass the idea of karate." These features, which consist of the game procedure, common karate moves, the idea of background scenes, a time element, a referee, computer graphics, and bonus points, result from either constraints inherent in the sport of karate or computer restraints. After careful consideration and viewing of these features, we find that they necessarily follow from the *idea* of a martial arts karate combat game, or are inseparable from, indispensable to, or even standard treatment of the *idea* of the karate sport. As such, they are not protectable. "When idea and expression coincide, there will be protection against nothing other than identical copying." *Krofft*, 562 F.2d at 1168. A comparison of the works in this case demonstrates that identical copying is not an issue.

Accordingly, we hold that the court did not give the appropriate weight and import to its findings which support Epyx's argument that the similarities result from unprotectable expression. Consequently, it was clear error for the district court to determine that protectable substantial similarity existed based upon these facts.

The lower court erred by not limiting the scope of Data East's copyright protection to the author's contribution—the scoreboard and background scenes. In actuality, however, the backgrounds are quite dissimilar and the method of scorekeeping, though similar, is inconsequential. Based upon these two features, a discerning 17.5

---

5.  A "sprite" involves the use of a special technique for creating mobile graphic images on a computer screen that is appropriate for animation. An increase in sophistication of sprite techniques used in the computer program will

year-old boy[6] could not regard the works as substantially similar. Accordingly, Data East's copyright was not infringed on this basis either.

Because we reverse in its entirety the district court's finding of copyright infringement, it follows that the injunction was improvidently granted. Accordingly, we remand to the district court to lift the injunction.

Each party is to bear its own costs.

REVERSED and REMANDED.

increase the graphic quality of the game's animation.

**6.** The district court found that the average age of individuals purchasing "Karate Champ" is 17.5 years, that the purchasers are predominantly male, and comprise a knowledgeable, critical, and discerning group.