**Michael STILLMAN, Plaintiff,**

v.

**LEO BURNETT COMPANY, INC., and United Airlines, Inc., Defendants.**

**No. 88 C 10957.**

United States District Court,
N.D. Illinois, E.D.

Sept. 15, 1989.

Alan F. Curley, C. Philip Curley, Kahn, Robinson & Curley, Chicago, Ill., for plaintiff.

Richard J. O'Brien, Andrew L. Goldstein, Monica Rimai, John Heller, Sidley & Austin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Michael Stillman has sued defendants Leo Burnett Company, Inc. ("Burnett") and United Airlines, Inc. ("United") for copyright infringement under the Copyright Act, 17 U.S.C. § 501, false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act ("the Consumer Fraud Act"), ch. 121½, ¶¶ 261 et seq., and the Illinois Deceptive Trade Practices Act, Ill.Rev.Stat., ch. 121½, ¶¶ 311 et seq. Stillman alleges that the defendants copied a "silent" television commercial he had created for Eastern Airlines, Inc. ("Eastern"), and then misrepresented that they had created their commercial through lucky inspiration. The defendants have moved to dismiss all three claims pursuant to Fed.R.Civ.P. 12(b)(6), but this court has converted a portion of the motion to a Rule 56 motion for summary judgment pursuant to Rule 12(b). For the reasons set forth below, the motion will be denied.

## FACTS

For the purposes of this motion, the court accepts as true the allegations of the complaint, the facts contained within the complaint's exhibits, and the videotapes (with accompanying storyboards) of the two commercials.[1] Stillman is a creative advertising consultant, and the creator and producer of television commercials. In late 1981, he created a commercial for Eastern's Canadian airline passenger market, which aired on Canadian television during 1982 and 1983.

The commercial employed silence as a way of attracting viewer attention to the screen. Of the nine screens in the commercial, the first eight were black with white reverse-type writing. The writing faded in and out from screen to screen—with the exception of the Eastern name and logo, which remained on the screen—and read as follows:

Screen 1:

A SILENT COMMERCIAL FOR

EASTERN SUPER 7'S

Screen 2:

MIAMI EASTERN SUPER 7'S

Screen 3:

7 NIGHTS 8 DAYS CHOICE HOTEL

EASTERN SUPER 7'S

Screen 4:

SCHEDULED ROUND TRIP FLIGHTS

EASTERN SUPER 7'S

Screen 5:

RENTAL CAR UNLIMITED
MILEAGE (AND MORE)

EASTERN SUPER 7'S

Screen 6:

ONLY $370 PER PERSON
DOUBLE OCCUPANCY

EASTERN SUPER 7'S

Screen 7:

WHY SO QUIET?

EASTERN SUPER 7'S

Screen 8:

---

1. In an earlier ruling, this court converted the defendants' motion to dismiss to one for summary judgment because, although courts have ruled on copyright claims at the pleading stage, the parties had not provided the court with the audio-visuals of the two commercials. In doing so, however, the court indicated that the parties should limit their supplemental briefs solely to the issue of substantial similarity, and that the parties would retain the opportunity to move for summary judgment on other issues at a later time. Thus, for the purposes of the instant motion, this court accepts as true all of the allegations of the complaint with the exception of those relating to the contents of the two commercials.

BECAUSE THE COMPETITION
IS SLEEPING

EASTERN SUPER 7'S

The last screen suddenly broke into color and sound, showing a picture of a sunset and containing a voice-over explaining the point of the silent commercial. The commercial was hugely successful and profitable for Eastern, and was widely discussed in Canadian and American advertising industry circles.

In 1986, after Eastern (inexplicably) decided not to use the silent commercial for its American market, Stillman, who owned the right to it, wrote two letters to United's president suggesting that United engage Stillman to produce silent commercials for United's American market. With the letters, he enclosed copies of the Eastern storyboard, and some ideas about how the silent commercial could be used for United.

United never hired Stillman, but in 1987 it did air a "silent" commercial on American television. This commercial, like the Eastern commercial, contained nine screens, the first eight of which were black with white reverse-type writing fading in and out from screen to screen and reading as follows:

Screen 1:

This is a silent commercial

Screen 2:

The money we saved on sound

Screen 3:

Helps keep our air fares this low:

Screen 4:

United's Chicago $89 from New York

UNITED AIRLINES

Screen 5:

United's Miami $89 from New York

UNITED AIRLINES

Screen 6:

United's Los Angeles $99
from New York

UNITED AIRLINES

Screen 7:

United's San Francisco $99
from New York

UNITED AIRLINES

Screen 7:

United's San Francisco $99
from New York

UNITED AIRLINES

Screen 8:

Call Now 212–867–3000 718–803–2200
201–624–1500 or your travel agent

Fares shown are each way with round trip—Restrictions apply. Seats are limited.

The last screen broke into color, showing an airplane taking off over the word "Roarrrrr," but maintaining silence.

The creator and producer of United's silent commercial was Leo Burnett. At the time Leo Burnett created the commercial, it was aware of Stillman's silent commercial for Eastern. Nevertheless, in interviews following the airing of the United commercial, Leo Burnett represented that it had created the silent commercial and that the creation resulted from "lucky inspiration."

In 1988, Stillman applied for and received a Certificate of Registration for his silent commercial from the United States Register of Copyrights. Shortly thereafter, he filed this lawsuit.

DISCUSSION

*Copyright Claim*

Courts frequently have said that a copyright claim contains only two elements: (1) the plaintiff's ownership of a valid copyright in a work; and (2) the defendant's copying of this work in creating another one. 3 *Nimmer on Copyright* § 13.01, at 13-3–13-4 (1988); *see, e.g., Atari, Inc. v. North American Philips Consumer Electronic Corp.*, 672 F.2d 607, 614 (7th Cir.

1982). In *Atari,* the Seventh Circuit elaborated on the second element. According to the Court of Appeals, a plaintiff can establish copying by showing (1) that the defendant had access to the plaintiff's work, and (2) that the two works are substantially similar. 672 F.2d at 614. Further, the Court of Appeals stated, a plaintiff establishes substantial similarity by showing (1) that "the defendant copied from the plaintiff's work and (2) [that] the copying, if proven, went so far as to constitute an improper appropriation." *Id.; accord Evans Newton, Inc. v. Chicago Systems Software,* 793 F.2d 889, 894 (7th Cir.1986).

At first blush, this framework appears circular: To prove copying, the plaintiff must prove substantial similarity; and to prove substantial similarity, he must prove copying. *See Nash v. CBS, Inc.,* 704 F.Supp. 823, 826 (N.D.Ill.1989). The confusion lies in the different meaning of the word "copying" in copyright law.

The copyright laws serve to promote the "progress of science and useful arts" by protecting the labors of those who create original works and thereby ensuring the profitability of their endeavors and their willingness to bring novel ideas to the public. *Sony Corp. v. University City Studios, Inc.,* 464 U.S. 417, 428–29, 104 S.Ct. 774, 781–82, 78 L.Ed.2d 574 (1984). Too much protection, however, would undermine the goal: If authors, by publishing their works, could remove the ideas incorporated in them from the public domain, then they could stifle, rather than advance, the development and exploitation of new ideas. 3 *Nimmer on Copyright* § 13.03[A] (1988). To skate the thin line between too much and too little protection, the copyright laws have come to distinguish between the expression of ideas on the one hand, and the ideas themselves on the other. Authors may protect the former; the latter remain freely available for other authors to develop and exploit. *See* 17 U.S.C. § 102(b);[2] *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2d Cir.1976).

Copying, as an element of a copyright claim, refers to the ultimate legal issue of whether the defendant violated the copyright laws by reproducing protectible expression from the plaintiff's work. *See Rockford Map Publishers, Inc. v. Directory Service Co. of Colorado, Inc.,* 768 F.2d 145, 149 (7th Cir.1985). Copying as a prong of substantial similarity, by contrast, is limited to the purely factual issue of whether the defendant used the plaintiff's work as a starting point for his own. *See Arnstein v. Porter,* 154 F.2d 464 (2d Cir. 1946). Thus, a defendant who has copied from a plaintiff's work as a factual matter—that is, by employing the plaintiff's ideas, procedures or techniques—may not have copied as a legal matter; the difference between the two lies in the second prong of the substantial similarity inquiry—i.e., unlawful appropriation. If a defendant has not copied something protected by the copyright laws—specifically, the plaintiff's expression of his ideas—then his copying will not subject him to liability. *Sid & Marty Krofft Television v. McDonald's Corp.,* 562 F.2d 1157, 1163–64 (9th Cir.1977). Thus, when the Seventh Circuit stated in *Atari* that, in effect, a plaintiff must establish copying in order to prove copying, what it must have meant was that the plaintiff must establish at least permissible copying as a prerequisite to proving illicit copying.

Yet, with this inexactitude in the *Atari* framework resolved, others emerge. If a defendant must prove copying in order to prove substantial similarity, why must he then prove access in order to establish an infringement? After all, copying, even in the permissible sense, clearly requires that the defendant have had access to—indeed, have relied upon—the plaintiff's work in creating the new one. *See Whelan Associates v. Jaslow Dental Laboratory,* 797 F.2d 1222, 1232 (3d Cir.1986). Moreover, although it is clear why a plaintiff must show improper appropriation in order to

---

**2.** Section 102(b) of the Copyright Act of 1976 provides:

In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b).

prove a copyright violation, it is difficult to see why such appropriation stands as a prong of substantial similarity, rather than as a separate element of the copyright cause of action. Substantial similarity, in the context of the *Atari* framework (672 F.2d at 614), is merely one of two elements—the other being access—that must be proved in order to permit an inference that the defendant usurped material from the plaintiff's work; this inference arises, however, upon proof of substantial similarity between even nonprotectible elements of the two works, without any need to prove that what was taken amounted to an unlawful appropriation of the plaintiff's expression. *See Arnstein,* 154 F.2d at 469.

These difficulties arise out of the dual usages of another term—substantial similarity. As just noted, substantial similarity can refer to the likeness between two works sufficient to give rise to an inference, when supported by evidence of access, that the defendant took ideas from the plaintiff's work. *See Selle v. Gibb,* 741 F.2d 896, 900–01 (7th Cir.1984); 3 *Nimmer on Copyright* § 12.11[D] at 12–83 (1986). Substantial similarity, however, is also used as a term of art relating to the unlawful nature of the similarities between two works. *See Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1110 (9th Cir. 1970); *Nimmer on Copyright* § 13.03[A] at 13–22.1 (1988) (similarity is not "substantial" if what was copied was nonprotectible).

*Atari* creates obfuscation because it refers to substantial similarity in its former usage, but then sets forth the test necessary to establish the latter. Proof of both copying and unlawful appropriation are necessary to establish substantial similarity when that term is used as a term of art; a copy that does not unlawfully appropriate protectible expression cannot be substantially similar in the sense required to establish a violation. *See Atari,* 672 F.2d at 614; *Evans Newton,* 793 F.2d at 895. They are not necessary, however, when substantial similarity is used in the sense of a factual predicate for an inference of copying. On the contrary, when the phrase is used in this sense, it is not copying which is necessary to establish substantial similarity, but

rather substantial similarity which is necessary to prove copying.

■ This discussion suggests that some clarification of the *Atari* logic is needed. To prevail on a copyright claim, a plaintiff must prove (1) a valid copyright, and (2) illicit copying. To prove illicit copying, he must establish both (1) copying, and (2) unlawful appropriation. *See Scott v. WKJG, Inc.,* 376 F.2d 467, 469 (7th Cir. 1967). To establish copying, a plaintiff must show (1) access, and (2) substantial similarity between the works "when compared in their entirety including both protectible and unprotectible material." 3 *Nimmer on Copyright* § 13.03[e] at 13–55 (1988). Finally, to show unlawful appropriation (i.e., substantial similarity as a matter of law), the plaintiff must demonstrate that the defendant's copying extended to the plaintiff's protectible expression.

The defendants have conceded, for the purposes of this motion, both the validity of the plaintiff's copyright and their permissible copying of the Eastern commercial. Their only argument at this stage is that, even assuming such copying, they are entitled to judgment because the United silent commercial did not copy any protectible material from the Eastern commercial. This argument requires a further analysis of how a plaintiff establishes the copying of protectible expression.

As noted above, the copying/unlawful appropriation dichotomy simply reflects the fact that the copyright laws do not protect ideas, procedures, and concepts, but only the expressions of ideas. Copying occurs when a defendant usurps the former; unlawful appropriation, however, requires the purloining of expression as well. In *Krofft,* the Ninth Circuit, building on *Arnstein v. Porter, supra,* articulated a bifurcated test for proving copying and unlawful appropriation.

The first test, the so-called extrinsic test, permits a plaintiff to prove copying by showing, through analytic dissection and (if necessary) expert testimony, that the similarities between the two works—when viewed in terms of their protectible and nonprotectible elements—are so substantial

as to warrant a finding that the defendant usurped, at least, the plaintiff's ideas. 562 F.2d at 1164. The second, or intrinsic, test addresses the indeterminate boundary between ideas and their expression. *See Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir.1930) (Hand, J.). Because the infringement of expression occurs when "the ordinary observer, unless he set out to detect the disparities [in two works], would be disposed to overlook them, and regard [the works'] aesthetic appeal as the same," *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960) (Hand, J.), the intrinsic test precludes reference to objective criteria and expert testimony, and requires instead an inquiry into whether an ordinary observer experiencing the two works would conclude that "the accused work has captured the 'total concept and feel' of the copyrighted work." *Atari*, 672 F.2d at 614 (quoting *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970)); *Krofft*, 562 F.2d at 1164; *Arnstein v. Porter*, 154 F.2d at 468.

*Krofft* further explained that summary judgment is rarely appropriate under the intrinsic test, since laymen are as qualified as judges to determine the reactions of an ordinary observer. 562 F.2d at 1166. If an ordinary observer could conclude that the defendant copied the plaintiff's expression (by using the plaintiff's work to create another work evoking a similar response in an ordinary observer), then, *Krofft* instructed (and *Atari* purported to follow, 672 F.2d at 614), the case should go to the jury. *See also Twentieth Century–Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327 (9th Cir.1983). *Compare Warner Bros. v. American Broadcasting Companies*, 654 F.2d 204 (2d Cir.1981) (summary judgment appropriate under intrinsic test where no reasonable jury could find similarity between the works); *Green v. Proctor & Gamble, Inc.*, 709 F.Supp. 418 (S.D.N.Y. 1989) (same).

Under *Krofft's* extrinsic-intrinsic tests, this court could not grant the defendants' motion for summary judgment. As the defendants acknowledge, under the extrinsic test a question of fact exists as to whether they copied Stillman's work: the commercials both use silence as the means of attracting viewer attention to the screen; they both begin with a screen stating that they are silent commercials; they both contain eight screens with black background and white lettering; they both break into color in the final screen; and they both tie their silence into the low fares of their respective airlines. Further, under the intrinsic test, a reasonable jury could find similarity of expression in the two commercials. Although the commercials have a different pace, a different message, and a different final frame, these differences do not so undermine the similarities as to render implausible a jury finding that the United commercial exudes the same total concept and feel as does the Eastern commercial. *See Atari*, 672 F.2d at 618 (focus of ordinary observer test is on similarities rather than differences); *C. Blore & D. Richman, Inc. v. 20/20 Advertising*, 674 F.Supp. 671, 680 (D.Minn.1987).

The intrinsic-extrinsic analysis, however, does not fully encompass the infringement inquiry. *See Krofft*, 562 F.2d at 1167. The intrinsic test, by focusing on the response of the ordinary observer, follows the accepted view that ordinarily a plaintiff can establish copying of expression even in the absence of identical copying. *Id.* Yet, because this test eschews analytic dissection, it fails to account for the possibility that the similarity of expression may fall within the category of what is known as nonprotectible expression. Specifically, when the expression is indistinguishable from the idea, the copyright laws prohibit only identical copying because to protect more would be to grant a monopoly over the idea. *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir.1971) (jeweled bee pins); *see Atari*, 672 F.2d at 614–15. In the same vein, when the similarity between two works arises exclusively from the use of the same process or technique—for example, the similar "concept and feel" of two impressionist paintings—it cannot form the basis for a copyright claim. *See Baker v. Selden*, 101 U.S. (11 Otto) 99, 101, 25 L.Ed. 841 (1879). Finally, "similarity of expression, whether literal or non-literal, which necessarily results from the fact that the common idea is

only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity." 3 *Nimmer on Copyright* § 13.03[A] at 13–21–13–33 (1988); *Frybarger v. International Business Machines Corp.,* 812 F.2d 525, 529–30 (9th Cir.1987). Stated in terms of the intrinsic test, a non-identical work that would evoke a similar response in an ordinary observer as does another work does not violate the latter's copyright if the similar response arises solely from the similarities of the nonprotectible elements of the two works. *See Data East USA, Inc. v. Epyx, Inc.,* 862 F.2d 204, 208 (9th Cir.1988); *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 120 (8th Cir.1987).

The defendants insist that a comparison of the United commercial with the Eastern commercial reveals that all they copied are the nonprotectible elements of Stillman's work. They first contend that the idea of using a silent commercial to attract viewer attention to the screen is indistinguishable from the expression of that idea through the use of silence, so that their use of silence *per se* cannot give rise to liability. They next assert that the use of black screens with white lettering and of color screens at the end are all audio-visual techniques which similarly cannot render them liable absent identical copying. Lastly, they urge that their copying of Stillman's use of a first screen stating that the commercial is silent is necessary to the expression of a silent commercial (i.e., to inform the viewers that their sets are not broken), and thus cannot form the basis for a copyright claim. Since any similarity in the total concept and feel of the two commercials results from these nonprotectible elements, and since the two commercials are not identical, the defendants conclude that no illicit copying has occurred.

The defendants are correct insofar as they argue that, in order to determine whether all of the similarities between two works result form the copying of nonprotectible expression, the court may undertake an analytic dissection of the two works. The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus, before a court may send a copyright case to the jury, it must satisfy itself that, even assuming copying of an idea and its expression, at least some of what the defendant copied falls into the area of protectible expression. *See Narell v. Freeman,* 872 F.2d 907, 910 (9th cir. 1989); *Aliotti v. R. Dakin & Co.,* 831 F.2d 898, 901 (9th Cir.1987).[3]

The defendants, however, misapply this inquiry in the instant case. Although a plaintiff can protect neither his ideas nor his use of procedures and techniques to express these ideas, he can protect the creative arrangement and interaction of the techniques composing the expression. *See Rockford Map Publishers, Inc. v. Directory Service Co. of Colorado, Inc.,* 768 F.2d at 148; *Reader's Digest v. Conservative Digest, Inc.,* 821 F.2d 800, 806 (D.C.Cir. 1987). As *Krofft* noted in countenancing limited analytic dissection for the purpose of ensuring some copying of protectible expression, "it is the *combination* of many different elements which may command copyright protection because of its particular subjective quality." 562 F.2d at 1169 (original emphasis). When this combination of elements is used in a way that is not "indispensable, or at least standard in the treatment of a given topic," *Atari,* 672 F.2d at 616, no idea-expression unity exists, and the requirement of near-identical sim-

**3.** In *Olson v. National Broadcasting Co.,* 855 F.2d 1446 (9th Cir.1988), the Ninth Circuit (without saying so) appears to have incorporated this requirement—that, if copying occurred, it extended to protectible expression—into the extrinsic test. In *Olson,* the Court affirmed a j.n.o.v. for the defendants under the extrinsic test after analytically dissecting the two works and determining that all of their similarities resulted from similarities in nonprotectible elements of the plaintiff's work. *See id.* at 1450–53. This approach, however, loses sight of the function of the extrinsic test, which is to determine not whether illicit copying occurred, but rather whether any copying occurred. Since the Court does not appear to have questioned the jury's determination that the defendants copied from the plaintiff, *see id.* at 1448, *Krofft* sbould have led the *Olson* Court to find the extrinsic test satisfied, and to confine itself to reviewing the jury's verdict under the intrinsic test and, if necessary, under the idea-expression unity limitation on this test, *see id.* at 1453.

ilarity does not come into play. See *Raffoler, Ltd. v. Peabody & Wright, Ltd.*, 671 F.Supp. 947, 953 (E.D.N.Y.1987). *Compare Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204 (9th Cir.1988) (no copyright infringement in karate video game because the combination and arrangement of copied elements—i.e., characters, gameboard, scorecard—was indispensable to the game).

■ Standing on their own, Stillman's use of an initial screen announcing that the commercial was a silent commercial, eight black screens with white lettering, and a color screen at the end, do not amount to protectible expression. Yet, the synergy of these nonprotectible elements in the Eastern commercial creates a whole that is greater than the sum of its parts. Each of the nonprotectible elements of the commercial may have been quite indispensable to a silent commercial, but Stillman's actual arrangement of these elements in the creation of his commercial was in no sense dictated by the idea of a silent commercial, and therefore renders the idea-expression unity limitation inapplicable here. *See McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 319–21 (9th Cir.1987). Should a jury find that the defendants copied the Eastern commercial in making the United commercial, and that in doing so they created a commercial that evokes a similar response in ordinary observers, this court could not say that the defendants' copying fell exclusively within the realm of the nonprotectible. Accordingly, the defendants' motion for summary judgment must be denied.[4]

### The State Law Claims

In Count II, Stillman alleges that the defendants violated the Illinois Consumer Fraud Act, Ill.Rev.Stat. ch. 121-½, ¶ 262, and the Illinois Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121-½, ¶ 312(2), by misrepresenting that they created the United commercial through "lucky inspiration" when, in fact, the inspiration for this commercial was Stillman's Eastern commercial and his proposal to make a similar one for United. The defendants have moved for dismissal[5] of these claims on the ground that they are preempted by the Copyright Act, 17 U.S.C. § 301(a).[6]

■ Section 301(a) establishes that the federal copyright laws shall provide the exclusive source of legal and equitable rights relating to copyright or its equivalent for works of authorship that are fixed in a tangible medium of expression and come within the subject matter of the copyright laws.[7] Thus, a state law claim is

---

**4.** After this court converted the defendants' motion to dismiss the copyright claim to one for summary judgment, Stillman filed his own motion for partial summary judgment on the issue of substantial similarity. This motion contains two flaws. First, it violates this court's order that the parties confine their supplemental briefs to the defendants' motion. Second, it ignores the fact that substantial similarity is not a unitary concept, but rather a matter of degree which must be viewed along with evidence regarding access—evidence that is not yet before the court—in the determination of whether copying occurred. Accordingly, the court will not rule on Stillman's motion at this juncture.

**5.** Although the court converted the defendants' Rule 12(b)(6) motion to one for summary judgment on the copyright claim, the court did not so convert the motion to dismiss the other claims, and therefore addresses these claims as if the case were still at the pleading stage.

**6.** In their reply brief, the defendants raise two additional arguments for dismissal of the state law claims: (1) that the claims fail to allege an injury to the public good or consumers generally; and (2) that they fail to allege a pattern of deceptive behavior. Because the defendants first interposed these arguments in reply, this court will not address them at this time. The court notes parenthetically, however, that ¶ 23 of the First Amended Complaint alleges that the defendants' "conduct has caused injury to the public and the likelihood of confusion or of misunderstanding to the public, including but not limited to users of advertising services, as to the source of the silent commercial."

**7.** Section 301(a) of the Copyright Act of 1976 provides:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by §§ 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State. 17 U.S.C. § 301(a).

preempted by § 301(a) if, but only if, two conditions are met: (1) the work in which the right is asserted is fixed in a tangible form and comes within the subject matter of copyright; and (2) the right is equivalent to any of the rights specified in the copyright laws. *Baltimore Orioles v. Major League Baseball Players Association,* 805 F.2d 663, 674 (7th Cir.1986), *cert. denied,* 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987); 1 *Nimmer on Copyright* § 1.01[B] at 1–9–1–10 (1988). Stillman does not take issue with the defendants' position that the first condition is satisfied; he apparently concedes that, because he seeks recovery on the basis of the defendants' implicit denial that they got their idea for a silent commercial from the Eastern commercial, he is asserting state law rights in his work. *See* 17 U.S.C. § 102(a)(6). Stillman contends, however, that the rights he is asserting do not satisfy the second condition because they are not equivalent to any of the rights specified in the copyright laws.

A state law right falls within the ambit of § 301(a)'s equivalence prong "if (1) it is infringed by the mere act of reproduction, performance, distribution, or display, or (2) it requires additional elements to make out a cause of action, but the additional elements do not differ in kind from those necessary for copyright infringement." *Baltimore Orioles v. Major League Baseball Players Association,* 805 F.2d at 677–78 n. 26; *see* 17 U.S.C. §§ 106, 301(b). Stillman seeks recovery under the Illinois statutes on the basis not merely of the defendants' reproduction of his commercial, but also of the defendants' misrepresentation regarding the source of their idea for it. Since the defendants do not dispute that misrepresentation is an essential element of the plaintiff's state law claims, *compare Nash v. CBS, Inc.,* 704 F.Supp. at 834 (misrepresentation not an essential element of common law misappropriation), the only remaining question is whether this element is qualitatively different from the elements of a copyright claim.

The defendants insist that it is not. According to them, every copyright violation inherently involves some degree of misrepresentation as to the identity of the author or creator of the allegedly infringing work. Thus, the defendants reason, proof of a copyright violation will always amount to proof of misrepresentation, so the misrepresentation element in the state laws is not qualitatively different from the elements required for a copyright claim. *See Mayer v. Josiah Wedgwood,* 601 F.Supp. 1523, 1535 (S.D.N.Y.1985) (element of commercial immorality not qualitatively different from elements of copyright since immorality always exists when the defendant has violated the copyright laws).

■ The court need not decide at this juncture whether the defendants are correct in their position that, if they violated Copyright Act, they simultaneously violated the state laws. For even if they are, the implied misrepresentation giving rise to liability under the state statutes would be that they created the expressive elements of the United commercials. Stillman, however, does not ground his state law claims on misrepresentations (implied or express) by the defendants' regarding the source of the expression in their silent commercial. Instead, he predicates these claims on the defendants' alleged misrepresentations regarding the idea for their commercial. Since, under the idea-expression dichotomy discussed at length above, the defendant lawfully may copy an idea, the defendants' reproduction and distribution of the United commercial in no way amounted to an implied representation that they created the idea for the silent commercial. For Stillman to prevail on his state law claims, he will therefore have to prove that they did something qualitatively different from mere reproduction and distribution—that is, that they made false representations regarding the source of their idea for the commercial.

In *Baltimore Orioles,* the Seventh Circuit suggested that an important consideration in copyright preemption inquiries is whether the state law serves the same goals as the copyright laws. 805 F.2d at 678–79; *Nash,* 704 F.Supp. at 833. Such an analysis provides further support for

the conclusion that Stillman's state law claims are not preempted. The copyright laws serve to protect Stillman's right to reap the benefits of the particular expression he employed in creating the Eastern silent commercial. The state laws, by contrast, will protect Stillman's right to prevent others from fraudulently taking credit for, and presumably benefiting in the future from Stillman's ability to develop novel ideas. The copyright laws do not prohibit the copying of ideas, but when a copier misrepresents that he is the creator, nothing in the copyright laws prohibits the states from providing a remedy. *See* 17 U.S.C. § 301(b); *Allied Artists Pictures Corp. v. Rhodes,* 496 F.Supp. 408, 444 (S.D. Ohio 1980), *aff'd in part,* 679 F.2d 656 (6th Cir.1982). Accordingly, the state law claims are not preempted.

*Lanham Act Claim*

In Count III, Stillman alleges that the same facts giving rise to his state law claims also state a claim for false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a). The defendants' sole basis for seeking dismissal of this claim is that, without a valid copyright claim, the Lanham Act claim too must fail. Since the court has denied the defendants' motion with respect to the copyright claim, the motion on the Lanham Act claim will be denied without further discussion.

## CONCLUSION

The defendants' motion to dismiss and for summary judgment is denied.