NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 27 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| YS BUILT LLC,<br><br>    Plaintiff-Appellant,<br><br> v.<br><br>YA HSING CHIANG CIND HUANG and GEORGE HUANG, and their marital community,<br><br>    Defendants-Appellees. | No. 17-35044<br><br>D.C. No. 2:15-cv-01411-BJR<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Barbara Jacobs Rothstein, District Judge, Presiding

Argued and Submitted June 7, 2018
Seattle, Washington

Before: BYBEE and N.R. SMITH, Circuit Judges, and HUCK,[**] District Judge.

Appellant YS Built LLC ("YS") appeals the district court's judgment in favor

of Appellees Ya Hsing Chiang Huang and Sheng Tan Huang ("the Huangs") on YS's

copyright infringement and breach of contract claims related to the construction of

---

  [*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

  [**]  The Honorable Paul C. Huck, United States District Judge for the U.S. District Court for Southern Florida, sitting by designation.

a home on the Huangs' lot in Bellevue, Washington, entered after a three-day bench trial. YS also appeals the district court's award of attorney's fees and costs to the Huangs under § 505 of the Copyright Act. The parties are familiar with the facts and proceedings, and we will not state them except as necessary to explain our decision.

We have jurisdiction under 28 U.S.C. § 1291. And for the reasons below, we affirm.

## I.     Copyright Infringement

The Huangs and YS spent almost a year negotiating a potential construction agreement. During their negotiation, the Huangs worked with and paid YS's architect to prepare architectural plans for their home ("Schneider Plans"). The parties ultimately failed to finalize the agreement, mostly because they could not agree on a price, and the Huangs hired Stanbrooke Custom Homes ("Stanbrooke") to build the home for them. Stanbrooke developed a new set of architectural plans for the Huangs ("Stanbrooke Plans"). YS alleged that the Stanbrooke Plans infringed upon the copyrighted Schneider Plans.[1]

In order to prove infringement, "a plaintiff must show that (1) he or she owns the copyright in the infringed work, and (2) the defendant copied protected elements

---

[1] Though the Huangs had paid for the Schneider Plans, the architect transferred the Schneider Plans copyright to YS at no cost.

2

of the copyrighted work," which may be proven by "fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Williams v. Gaye*, 885 F.3d 1150, 1163 (9th Cir. 2018). Because the Huangs do not dispute the validity of YS's copyright or that they had access to the Schneider Plans, the only relevant issue is whether the Stanbrooke Plans are substantially similar to the Schneider Plans. The district court's substantial-similarity findings are findings of fact, reviewable for clear error. *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 206 (9th Cir. 1988).

This Circuit "use[s] a two-part test for [determining] substantial similarity: an extrinsic test and an intrinsic test." *Williams*, 885 F.3d at 1163. In order to prevail, YS must satisfy both the extrinsic and intrinsic similarity tests. *Id.* "The intrinsic test . . . is subjective" and considers "whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." *Id.* "Since the intrinsic test for expression is uniquely suited for determination by the trier of fact, this court must be reluctant to reverse it." *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1166 (9th Cir. 1977), *superseded in part on other grounds*, 17 U.S.C. § 504(b).

The district court did not clearly err in finding that the Stanbrooke Plans were not intrinsically similar to the Schneider Plans. The district court explained that unlike the Stanbrooke Plans, the Schneider Plans were elegant and artistic,

3

showing "an airy, light structure focused on aesthetic value rather than utility as a dwelling," and had a "relatively minimalistic and spare" floor plan. The Stanbrooke Plans, on the other hand, were "more utilitarian and pragmatic[ly] focus[ed]," and incorporated a "closed," "walled," and more "confin[ed]" floor plan driven by "cost-conscious[] and practical[]" considerations. These intrinsic differences rendered "the total concept and feel of each . . . not substantially similar." On review, we find no clear error in the district court's intrinsic-similarity findings, and, as the district court noted, that finding alone "[wa]s determinative for [this] decision . . . ." We therefore need not reach YS's arguments as to the district court's finding that the plans also lacked extrinsic similarity.

## II.    Breach of Contract

YS also alleged that by hiring Stanbrooke instead of YS, the Huangs breached a letter of intent ("LOI") and a land-purchase agreement ("Land Agreement") that bound the Huangs to use only YS to build the home.

The district court did not err in holding that YS and the Huangs did not form an enforceable construction agreement. As the record reveals, the parties never mutually assented to an enforceable construction agreement, despite expressing in the LOI and Land Agreement that they intended to enter into one in the future. *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004) (explaining that under Washington law, "for a contract to form, the parties must

4

objectively manifest their mutual assent."). References to what the Huangs "will," "wish[] to," or "shall be required to" do at some later time show only their future—not a then-present—intention of entering into a construction agreement with YS. Also, the parties' continued negotiations, particularly over a price, further demonstrate that they had not yet reached a final, mutually-assented-to construction agreement when they executed the LOI and Land Agreement. The district court was therefore correct that the clauses on which YS's breach-of-contract claim rests merely established an "agreement to agree," which is not enforceable under Washington law. *P.E. Sys., LLC v. CPI Corp.*, 289 P.3d 638, 644 (Wash. 2012).

We thus affirm.

### III.    Attorney's Fees and Costs

The district court did not abuse its discretion in awarding the Huangs their attorney's fees and costs under § 505 of the Copyright Act. *See Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996). The district court carefully weighed the five non-exclusive factors set out in *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994). Specifically, as for the degree of success obtained, the district court noted that the Huangs prevailed completely against YS's copyright claim. As for the frivolousness and reasonableness of YS's claim, it found that "Plaintiff['s] [claim] did not have a reasonable likelihood of success," because the Schneider and Stanbrooke Plans shared few meaningful similarities, and "the lack of overall similarity between [the

5

Plans] was apparent." That rendered YS's claim "objectively unreasonable, if not frivolous." As for YS's motivation, the district court found that rather than "advance the public good envisioned by the Copyright Act," YS leveraged its copyright to "bully [the Huangs] into building a project they did not want to be part of." Lastly, as for the need to compensate and deter, the district court found that "a fee award [wa]s appropriate to deter similar abuses of copyright and to compensate the Huangs for time spent defending against this suit," which, it stressed, was "improperly motivated."

The district court appropriately assessed the *Fogerty* factors and made findings well within the range of its discretion. We thus affirm the district court's award of attorney's fees and costs.

**AFFIRMED.**