**LIDA, INC., Plaintiff,**

v.

**TEXOLLINI, INC.; B.B. Blu, Inc. and John Does 2–40, Defendants.**

**No. 91 Civ. 2640 (KTD).**

United States District Court,
S.D. New York.

July 16, 1991.

Baer Marks & Upham, New York City, for plaintiff; Michael Delikat, Anthony De Toro, of counsel.

O'Sullivan Graev & Karabell, New York City, for defendant Texollini, Inc.; J. Douglas Richards, of counsel.

Yerushalmi, Shiboleth, Yisraeli & Roberts, New York City, for defendant B.B. Blu, Inc.; A. David Stern, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Lida, Inc. ("Lida") commenced this action alleging copyright infringement, unfair competition, and deceptive and unfair acts and practices against defendants Texollini, Inc. ("Texollini"), B.B. Blu, Inc. ("B.B. Blu"), and John Does 2–40. Lida has moved, by Order to Show Cause, for preliminary injunctions against Texollini, B.B. Blu, and John Does 2–40. A hearing was conducted before me on May 24, 1991. The following constitute my findings of fact and conclusions of law.

## FACTS

Lida is in the business of dying and imprinting unbleached, undyed fabric (greige goods) with a design and selling the finished bolts of fabric to companies that use it to manufacture garments. Second Amended Complaint (2nd Compl.) ¶ 2. Tex-ollini also converts greige goods into printed fabric and is one of Lida's competitors. 2nd Compl. ¶ 3. B.B. Blu manufactures and sells garments made with the printed designs. 2nd Compl. ¶ 4.

On June 18, 1990, Lida purchased the first design in question from Wendy Booth, a textile and graphic designer who also acts as an agent for other designers. 2nd Compl. ¶ 6. Booth sold the artwork of creator Judith Found.[1] Booth Depo. at 31–34. Prior to sale, the artwork was not shown to anyone except on a confidential basis for the purpose of sale. Booth Depo. at 47–52. An invoice, stating that "The Seller Warrants This Artwork To Be Original And Copyrightable Designs" accompanied the sale. Richards Aff., Exh. B.

Subsequently, the artwork served as a basis for Lida's textile design entitled "Crayola Garden." This design was put into repeat.[2] On August 10, 1990, Lida received, from the Register of Copyrights, a certificate of registration No. VA 418–097. 2nd Compl. ¶ 8. In addition, the fabric itself was embossed with an encircled "c," indicating a notice of copyright. 2nd Compl. ¶ 12. Lida's application states that the fabric design was an original work of the author, i.e. Lida, made for hire. 2nd Compl., Exh. B.

In January 1991, B.B. Blu ordered 700 yards of material containing the Crayola Garden design. 2nd Compl. ¶ 13. Subsequently, garments made with imprinted fabric, similar in design to Lida's Crayola Garden design, were manufactured by Texollini, and appeared in stores under B.B. Blu's label. The Texollini design, which was produced into B.B. Blu's line of garments, has been offered to other manufacturers with the claim that it is an original design. Texollini's fabric is offered at a price substantially lower than offered by Lida. 2nd Compl. ¶ 21.

---

**1.** Neither Booth nor Found had registered the work with the copyright office. Nor did Lida receive any explicit written assignment of any copyright interest, although there was the understanding that Lida would eventually copyright all the designs it purchased. Booth Depo. at 36–38. Subsequently, Found formally as-signed all her rights in the original work to Lida. The work was already copyrighted at that point.

**2.** "Repeat" is a process whereby an individually created design is repeated over and over any number of times on one bolt of fabric.

In November 1990, Lida's internal art department created a wholly different design, entitled the "Michelangelo design." 2nd Compl. ¶ 27. Certificate of registration No. VA 427–245 was awarded Lida for that design on December 17, 1990.

By January and March of 1991, B.B. Blu had ordered from Lida approximately 700 yards of material containing the Michelangelo design. 2nd Compl. ¶ 34. Subsequently, garments made with a design almost identical to the Michelangelo design and manufactured by Texollini, appeared in stores under B.B. Blu's label. Texollini's rendition sold in the marketplace at a price substantially lower than that charged for Lida's Michelangelo. 2nd Compl. ¶ 42.

## DISCUSSION

The standard for granting a preliminary injunction requires a showing of irreparable harm and either: (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). In addition, a balancing of the hardships must tip decidedly toward the party requesting the preliminary relief. *Id.*

■ B.B. Blu and Texollini oppose injunctive relief only as to the Crayola design.[3] Production of a certificate of registration to a design presumptively constitutes a showing of copyright ownership. *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980). Lida has produced such a certificate.

■ However, Texollini maintains that Lida, in its application for a copyright, misrepresented certain material facts regarding the design's origins and thus the copyright is a nullity. Specifically, Lida stated on its application to the registry that it was the design's author when in fact the design was brokered to Lida from an independent party and the design's creator was not employed directly by the corporation. In response to question six on Lida's application for a copyright, namely, "identify any pre-existing work or works that this work is based on or incorporates," Lida wrote "N/A," apparently indicating the design was not a derivative work. 2nd Compl., Exh. B.

■ Because there are false statements on the certificate, Texollini claims that Lida's evidence of ownership of a valid copyright is null and void. I disagree. "Only the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid, and thus incapable of supporting an infringement action ... or denying enforcement on the grounds of unclean hands ...' " *Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir.1984) (*quoting Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F.Supp. 980, 988 (S.D.N.Y.1980)). Texollini has adduced no evidence that Lida was engaged in fraudulent conduct by these errors in its application. An innocent or inadvertent omission will not invalidate a copyright registration. *Eckes*, 736 F.2d at 862. It is certainly not outlandish to think that Lida considered itself the originator of the copyright design since it purchased rights which are attendant to that status. The misrepresentation can easily be construed as inadvertent and unintentional. Therefore, under these circumstances there is insufficient evidence to rebut the presumption of validity for Lida's copyright.

■ Texollini next challenges the transfer of rights in the design. In this case, Found, through her agent Booth, sold to Lida an uncopyrighted work with a transfer of all rights in that work. There can be no question of improper transfer of copyright because no copyright was ever transferred.[4] Lida was never an assignee of an existing copyright, but was the copyright

---

3. B.B. Blu has not submitted opposition papers but joins in the arguments made by Texollini.

4. Recordation of transfer is not at issue because the recent amendments to the copyright law have eliminated 17 U.S.C. § 205(d), the requirement for recordation of transfers.

owner. *See Peter Pan Fabrics, Inc. v. Rosstex Fabrics, Inc.*, 733 F.Supp. 174, 177 (S.D.N.Y.1990) (uncopyrighted painting, sold to plaintiffs with a transfer of all rights, entitled plaintiffs to become copyright owner for fabric design based on painting when the copyright was registered).

██ Lida can prove infringement of its copyright by demonstrating access to the copyrighted works and substantial similarities between the designs. *Business Trends Analysts, Inc. v. The Freedonia Group, Inc.*, 887 F.2d 399, 402 (2d Cir. 1989). Texollini and B.B. Blu do not contest for the purposes of this motion that they had access to the works.

██ If an "average lay observer would recognize the alleged copy as being appropriated from the copyrighted work," then that constitutes substantial similarity. *Novelty Textile Mills, Inc., v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093 (2nd Cir.1977) (*quoting Ideal Toy Corp. v. Fab–Lu, Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966)). There are a number of elements in the Crayola Garden design that are all but identical to the challenged design. For example, there are: a paisley (tear drop shape figure), Stewart Aff., Exhs. B and C, element 1; a flower design, element 2; a series of dots, element 4; a series of triangles and dots, element 5; a geometric design, element 7; and a series of triangles and dots, element 9. Other elements are very similar, such as the geometric/floral designs, elements 3 and 8. Indeed, an average lay observer in the case at bar would easily be misled as to the origin of the infringing design and would likely determine that Texollini's copy was appropriated from the copyrighted work.

██ In a copyright infringement case, irreparable injury should ordinarily be presumed if the copyright is shown to be prima facie valid and defendant is shown to have infringed that copyright. *Atari, Inc. v. North Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 620 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982) (citing *Wainwright Sec., Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978)). The allegations of irreparable injury need not be very detailed if a prima facie case of copyright infringement can be shown. *Wainwright*, 558 F.2d at 94. As aforementioned, Lida's copyright ownership is prima facie valid and Texollini was shown to have infringed that copyright. Texollini argues however, that because it has ceased printing and distributing the contested design, a preliminary injunction is unduly burdensome and inappropriate. Further, according to Texollini, the balancing of the hardships weighs in its favor because only a small amount of fabric, relative to its overall production, was sold and it has the capacity to pay in damages Lida's measurable losses.

It appears that on two occasions B.B. Blu received fabric samples from Lida but instead of paying full price for the copyrighted fabric, it sought to ride on the coattails of Lida's popularity, purchasing cheaper "knock offs" from Texollini. Sale of inferior quality fabrics containing the Lida designs, at a lower price and on inferior fabric, threatened Lida's reputation in the marketplace, caused a loss of sales, and could have potentially diluted the overall worth of its designs. The copyright laws were enacted to prevent just this type of wilful infringement. Although Texollini earnestly represents that it will no longer market the challenged design, its representations are insufficient to convince me that an injunction should not issue in this case. Certainly Texollini loses nothing of any substance if an injunction were put into place. Lida, however, would be assured its status as a rightful copyright owner should Texollini be preliminarily enjoined.

██ B.B. Blu consents to all but one of Lida's requests for interim relief. B.B. Blu objects to the disclosure of its customers, claiming that at this point in the litigation such a request is premature. B.B. Blu further asserts that it would be inequitable to require B.B. Blu to reveal customer lists to Lida because it threatens its good will and ongoing business relationships in the marketplace, especially in light of the small

amount of fabric sold. I disagree. The sales of the infringing garments involved at least $100,000.00, amounting to almost 10% of B.B. Blu's total sales to these customers. B.B. Blu appears to have been the instigator and source of the mischief done here. To protect its reputation in the marketplace would be in effect to reward wrongdoing.

For the foregoing reasons, the preliminary injunction shall issue and B.B. Blu will be required to supply, within ten days of the date hereof, a list of its customers to Lida.

SO ORDERED.