**Sinclair L.D. JOHNSON, t/a S.L.D. Johnson Marketing/Advertising and t/a S.L.D. Johnson Marketing/Advertising, Inc., Plaintiff,**

v.

**AUTOMOTIVE VENTURES, INC., et al., Defendants.**

Civ. A. No. 94–0049–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

June 21, 1995.

Michael F. Urbanski, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, Roger Neal Keesee, Jr., Francis H. Casola, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, Thomas B. Hobbes, Washington, DC, Andrew J. Gray, IV, Washington, DC, for Sinclair L.D. Johnson.

Ronald M. Ayers, Johnson, Ayers & Matthews, Roanoke, VA, Kenneth John Ries, Johnson, Ayers & Matthews, Roanoke, VA, for Automotive Ventures, Inc., Gary A. Duncan.

Ronald M. Ayers, Johnson, Ayers & Matthews, Roanoke, VA, Harry Franklin Bosen, Jr., Salem, VA, Kenneth John Ries, Johnson, Ayers & Matthews, Roanoke, VA, Donald L. Dennison, Dennison, Meserole, Pollack & Scheiner, Arlington, VA, for Automotive Ventures, Inc., Gary A. Duncan.

Kenneth John Ries, Johnson, Ayers & Matthews, Roanoke, VA, for Auto World of Roanoke, Inc., Heritage Buick–Oldsmobile–Pontiac–GMC Truck, Inc.

### MEMORANDUM OPINION

TURK, District Judge.

This case is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. After careful consideration of the record, the applicable law, the briefs submitted by the parties, and the arguments presented by counsel at the hearing, the court finds that it must grant defendants' motion.

### I. BACKGROUND

The crux of plaintiff Sinclair L.D. Johnson's ("Johnson") case concerns allegations of copyright and service mark infringement. Plaintiff currently maintains a sole proprietorship, which apparently has traded as "Sinclair L.D. Johnson Marketing/Advertising" and "Sinclair L.D. Johnson Marketing/Advertising, Inc." The entity formerly was incorporated in the District of Columbia, but the District revoked its articles of incorporation in 1984. Plaintiff now operates the business out of his home in Alexandria, Virginia.

Johnson specializes in the development of car advertising promotions, which he licenses to automotive dealerships primarily in the eastern United States. The dispute in this case stems from defendants'[1] alleged unauthorized use of one of these promotions. Johnson's copyright claim derives from two copyright registration certificates. The first of these, TXu 423–406, dated July 9, 1990 and entitled "Test Market Pricing," describes the material created as "original text," and lists as its claimant "S.L.D. Johnson Marketing/Advertising, Inc." The certificate is signed "Sinclair L.D. Johnson," as authorized agent of "S.L.D. Johnson et al." A copy of the material covered by the certificate, a one page sample advertisement, is attached to this memorandum opinion as Figure 1.

The second certificate, TXu 449–564, dated December 13, 1990 and entitled " 'Test Market Pricing' Direct Mail Letter," describes the material created as "intire [sic] text." In contrast to the first registration certificate, TXu 449–564 lists the claimant as "Sinclair L.D. Johnson" and is signed "Sinclair L.D. Johnson," as author. The material covered by this certificate is a one page sample promotional letter.

Johnson has alleged that on September 11, 1990 he transmitted to Duncan via facsimile copies of materials derived from TXu 423–406 and designating the phrase "Test Market Pricing" as a service mark. After receiving two phone calls from Johnson, Duncan indicated that Automotive Ventures was not interested in using the promotional materials. Subsequently, defendants ran several advertisements in the *Roanoke Times & World News* that plaintiff contends infringed his copyright and service mark. Johnson's three count second amended complaint sets forth four claims against defendants: a federal copyright infringement claim pursuant to 17 U.S.C. § 501, a federal unfair competition claim pursuant to 15 U.S.C. § 1225(a), and state common law service mark and unfair competition claims.

The parties have briefed the relevant issues exhaustively, and the court held a hearing in this matter on April 19, 1995. Accordingly, defendants' motion is now ripe for this court's consideration.

### II. ANALYSIS

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper where "there is no genuine issue as to any material fact." In this case, defendants "bear[ ] the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992). If defendants carry this burden, "[t]he burden then shifts to the nonmoving party to come forward with facts

---

1. Plaintiff has sued Automotive Ventures, Inc. ("Automotive Ventures"), Gary A. Duncan ("Duncan"), Auto World of Roanoke, Inc., and Heritage Buick–Oldsmobile–Pontiac–GMC Truck, Inc. The common thread among the cor- porate defendants is Duncan, who maintains an ownership interest in all of them, and to whom plaintiff attributes the alleged copying of his promotional materials.

sufficient to create a triable issue of fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)).

Moreover, "[o]nce the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.,* 977 F.2d 872, 874–75 (4th Cir.1992). Although admissibility of the evidence at trial is unnecessary, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Id.* (quoting *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987)).

## A. *Copyright Claim*

Plaintiff must prove two elements in order to establish copyright infringement: " '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.' " *Takeall v. Pepsico, Inc.,* 14 F.3d 596, 29 U.S.P.Q.2d 1913, 1993 WL 509876, at **3 (4th Cir. Dec. 8, 1993) (unpublished opinion) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361–63, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991)). The court will address these elements in turn.

### 1. Validity of the Copyrights

As a preliminary matter, the court will assume for the purposes of this decision that plaintiff owns a valid copyright in TXu 449–564, his "direct mail letter." Defendants have not argued against its validity either as to its registration or its subject matter (except to the extent plaintiff claims that the phrase "test market pricing" is a protected element of that work).[2] By memorandum opinion and order dated August 30, 1994, this court stated that the issue of the validity of TXu 423–406 was irrelevant "since the allegedly copyrighted material was registered under plaintiff's name prior to the alleged infringement." Given, however, that Johnson alleges copying of more than just the phrase "test market pricing," Johnson's infringement case rests largely on TXu 423–406, and the court now must consider its validity.

### a. Registration Errors

Defendants' first contention regarding TXu 423–406 is that certain registration errors render it either void or owned by an entity other than plaintiff. The first of these errors involves the designation of the claimant as "S.L.D. Marketing/Advertising, *Inc.*" (emphasis added). In addition, the certificate was signed "Sinclair L.D. Johnson," as the authorized agent of "S.L.D. Johnson, et al." Since the undisputed evidence shows that the District of Columbia revoked this corporate entity's articles of incorporation in 1984, defendants argue, either the certificate is a nullity or Johnson, in his individual capacity, lacks standing to sue for infringement on the certificate.

Defendants next contend that Johnson wrongfully omitted information regarding prior publication of the work. The evidence also is undisputed that plaintiff licensed the same promotional materials contained in 423–406 to the Dominion dealership and that, pursuant to that license, an advertisement containing the slogan "Test Market Pricing" ran on June 29, 1990 in *The Virginian–Pilot* newspaper. Defendants argue that the failure to disclose this prior publication[3] consti-

**2.** The *Copyright Act* delineates subject matter eligible for protection as follows:

> (a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated.... Works of authorship include the following categories:
>
> > (1) literary works;
> > ....
> > (5) pictorial, graphic, and sculptural works[.]
>
> (b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work. 17 U.S.C. § 102.

**3.** The parties vigorously dispute whether the June, 1990 newspaper advertisement constituted a "publication" as contemplated under the Copyright Act. Under the Act,

> "Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons

tutes a "fundamental registration error" depriving the court of jurisdiction. *See Determined Productions, Inc. v. Koster,* 1993 WL 120463 (N.D.Cal. April 13, 1993) (unpublished opinion).

"Only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid, and thus incapable of supporting an infringement action or denying enforcement on the grounds of unclean hands." *Lida, Inc. v. Texollini, Inc.,* 768 F.Supp. 439, 442 (S.D.N.Y.1991) (internal quotation marks, ellipses, and citations omitted). Moreover, "[a]n innocent or inadvertent omission will not invalidate a copyright registration." *Id.* Finally, where the misstatement does not affect the validity of the copyright, it is immaterial if "no prejudice has accrued to defendants." *Testa v. Janssen,* 492 F.Supp. 198, 201 (W.D.Pa.1980).

■ Johnson has presented evidence that an examiner at the copyright office filled out TXu 423–406 and that he relied on the examiner's expertise. While he may not have been entitled to so rely, there is at least a genuine factual dispute on the issue whether the omissions and misrepresentations were anything other than innocent mistakes. Plaintiff has testified at deposition that he is the owner of TXu 423–406, and defendants have not produced evidence refuting this claim. Nor have defendants shown how the alleged errors have prejudiced them in any way. The court cannot hold on the current state of the record that the misstatements and potential omissions in TXu 423–406 render it invalid. *But see Koster,* 1993 WL 120463, at *1 (holding that "[w]rongly identifying a number of published individual works as an unpublished collection is a fundamental registration error, which deprives this court of jurisdiction over the copyright claim").

for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication. 17 U.S.C. § 101. For the reasons stated below, the court need not resolve how the language of

### b. Copyrightability of TXu 423–406

Defendants next argue that the substance of TXu 423–406 is not copyrightable. Specifically, they contend that the phrase "test market pricing" is ineligible for copyright protection. Plaintiff counters, without conceding that the phrase "test market pricing" is not copyrightable *per se,* that he does not claim a copyright in the phrase alone, but in the advertisement as a whole.

Generally, the copyright law distinguishes ideas from expression, affording protection to the latter but not to the former. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea. . . ."); *Feist,* 499 U.S. at 351–53, 111 S.Ct. at 1291 (recognizing as axiomatic "that no one may copyright facts or ideas"); *Narell v. Freeman,* 872 F.2d 907, 910 (9th Cir.1989) (noting that "[c]opyright law protects only an author's expression"). This general rule furthers the purpose of the Copyright Act, which is " '[t]o promote the Progress of Science and useful Arts.' " *Feist,* 499 U.S. at 349, 111 S.Ct. at 1290 (quoting U.S. Const. art. I, § 8, cl. 8). In the spirit of protecting expression without stifling ideas, courts have refused to extend protection to short phrases. *See* 37 C.F.R. § 202.1(a) (listing as examples of materials not subject to copyright "[w]ords and short phrases such as names, titles, and slogans"); *Takeall,* 1993 WL 509876, at **8 (holding that the slogan "You've got the right one, uh-huh" "fails to evince the requisite degree of originality to entitle it to copyright protection and is a short expression of the sort that courts have uniformly held uncopyrightable"); *Narell,* 872 F.2d at 911 ("Ordinary phrases are not entitled to copyright protection.").

■ The court holds that the phrase "test market pricing" is a short phrase that is not copyrightable in and of itself. Plaintiff admitted at deposition that the phrase "test market pricing" was "an economic concept"

the Act applies to the facts in this case, although it is at least plausible that the licensing of promotional materials to an automotive dealer for publication in a newspaper would constitute "the distribution of copies . . . of [that] work to the public . . . by rental lease or lending."

he had run across earlier in his education, but that it was his original idea to apply that concept in the context of automotive advertising. The court finds that, regardless of whether or not the phrase constituted an established economic term, it embodied an idea. While plaintiff contends that his idea was a novel one, "test marketing a price, as opposed to a product," Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment, he nevertheless can lay no claim to copyright protection of its expression in a short phrase. Inasmuch as "test market pricing" is a concept represented by a short, ordinary phrase, it is not entitled to copyright protection in and of itself.

■ Plaintiff contends that finding the phrase "test market pricing" noncopyrightable does not answer the question whether TXu 423–406, as an automotive promotion, is copyrightable, since he claims a copyright in the work as a whole, not just the short phrase. As a general proposition, advertisements may be copyrighted provided that their material is otherwise copyrightable. *Raffoler, Ltd. v. Peabody & Wright, Ltd.,* 671 F.Supp. 947, 950 (E.D.N.Y.1987). The issue before the court in this case is whether the work, taken as a whole, evinces the requisite originality. The threshold for originality under the Copyright Act is low. Thus, for example, with respect to compilations of factual materials, the selection and arrangement of otherwise uncopyrightable facts, "so long as they are made independently by the compiler and entail a minimum degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws." *Feist,* 499 U.S. at 348, 111 S.Ct. at 1289. Likewise, an advertisement consisting of nonprotectible component parts may qualify as original nonetheless. *See Raffoler, Ltd.,* 671 F.Supp. at 951 (holding that, in assessing the work as a whole, plaintiff's "distinct and original combination of slogans ..., general advertising copy ..., title phrased in the form of a rhetorical question, and the arrangement of words and illus-

trations of the marketable item" manifested sufficient originality to qualify for copyright protection).

■ While the court is unimpressed by plaintiff's unique contribution to promotional expression in automotive advertising, plaintiff's work meets the requirement of originality notwithstanding. Plaintiff's promotion does consist of more than merely the phrase "test market pricing." That phrase is printed in large block letters at the top of the page. Immediately below that, stars bracket "3 DAYS ONLY." The promotional material indicates that the day, month, date, and hours of the three days are to follow. The advertisement also includes specific text, and the phrase "PRICE SELLS CARS," graphically represented. Assuming that Johnson himself has not copied this promotion, the overall presentation constitutes a copyrightable work.[4]

### 2. Copying

■ The sole remaining copyright issue is whether defendants' advertisements copied constituent elements of the work that are original. To this end, the court in *Stillman v. Leo Burnett Co.* tersely summarizes the often opaque case law as to the applicable analytic framework:

> To prevail on a copyright claim, a plaintiff must prove (1) a valid copyright, and (2) illicit copying. To prove illicit copying, he must establish both (1) copying, and (2) unlawful appropriation. To establish copying, a plaintiff must show (1) access, and (2) substantial similarity between the works "when compared in their entirety including both protectible and unprotectible material." Finally, to show unlawful appropriation ..., the plaintiff must demonstrate that the defendant's copying extended to the plaintiff's protectible expression.

720 F.Supp. 1353, 1358 (N.D.Ill.1989) (citations omitted). *See also Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir.) (requiring that plaintiff show copying "by proving access and substantial similarity between the

---

4. As discussed in further detail below, however, the protection afforded this work is limited in scope.

works, and also show that his expression was 'improperly appropriated,' by proving that the similarities relate to copyrightable material" (citations omitted)), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). In the present case, defendants have presented sufficient evidence of copying to withstand summary judgment. Therefore, the court need discuss neither access nor substantial similarity in this context.[5]

The issue the court must consider in this case concerns the improper appropriation prong of the illicit copying requirement. Specifically, the issue, as in *Stillman,* is whether, even assuming some copying, defendants are entitled to summary judgment because the advertisements did not copy protectible material from Johnson's promotional materials. *See Stillman,* 720 F.Supp. at 1358. The heart of this inquiry is whether the sole basis of Johnson's copyright action is the appropriation of elements that are *per se* ineligible for copyright protection. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 20.

After careful review of the allegedly infringing advertisements, the court has no difficulty in concluding, as a matter of law, that the copying, if any, did not extend to elements of plaintiff's protected expression. Representative samples of the allegedly offending advertisements are attached to this memorandum opinion as Figure 2. The court finds that the only similarity between Johnson's promotional materials and defendants' advertisements is the phrase "test market pricing," rendered in bold-face capital letters, and the concept of test marketing prices. As discussed above, plaintiff has no protectible interest in either the phrase or the concept.

■ Plaintiff struggles to demonstrate aspects of defendants' advertisements which, if found to have been copied, would extend to plaintiff's protected expression.[6] The court is unpersuaded. The similarities upon which plaintiff bases his showing of unlawful appropriation relate to elements that routinely appear either in newspaper advertisements in general or in automotive newspaper advertising specifically. Johnson can claim no protected ownership of automobile promotion, prominent "banner-headlines," or disclosure of the value and number of vehicles subject to the promotion at issue. Nor do the copyright laws protect the use of such concepts as limited promotional duration or non-negotiable pricing. Under Johnson's formulation, virtually any automotive advertisement including the phrase "test market pricing" necessarily would also appropriate protected elements of TXu 423–406.

Plaintiff's endeavor to establish illicit copying aids in illustrating why the scope the protection to which TXu 423–406 is entitled is narrow indeed. Plaintiff's analysis blurs the distinction between protectible expression and unprotectible ideas. As discussed above, plaintiff is entitled to protection not of concepts but of distinct and original expression. *Stillman* elucidates the conceptual difficulties

---

5. Plaintiff relies heavily on *M. Kramer Mfg. Co. v. Andrews* for the proposition that "[i]f there was clear proof of actual copying by the defendants, that is the end of the case." 783 F.2d 421, 445 (4th Cir.1986). The *Stillman* framework reveals the flaw in such reliance. The court's comment in *Kramer* referred only to the "copying" prong of "illicit copying." The point the court makes in *Kramer* is that, where there is direct evidence of copying, plaintiff need not engage in the substantial similarity analysis. *Id.* That is not to say that, where, as here, the court cannot resolve the copying issue on summary judgment, its inquiry must end if, unlike the situation in *Kramer,* the protectibility of the copied material is at issue.

6. Johnson enumerates these "clear similarities" as follows:

(1) Promotion of automobiles.

(2) Prominent, block, lettered contrasted "banner-headline" presentation of the terminology TEST MARKET PRICING as a visual "grabber" of the reader's attention.

(3) Use of the same prominent, graphic presentation of the name of the dealership.

(4) Prominently displaying the number of vehicles subject to the sale below the "TEST MARKET PRICING" headline.

(5) Graphic and compositional presentation of message to the reader regarding:

(a) Testing price for a limited duration.

(b) Clearly marked, non-negotiable no hassle/no haggle prices.

(c) Disclosure of value (as well as the number) of vehicles subject to sale.

Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 12.

that result when the expression and the idea overlap:

> [W]hen the expression is indistinguishable from the idea, the copyright laws prohibit only identical copying because to protect more would be to grant a monopoly over the idea. .... "[S]imilarity of expression ... which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity."

720 F.Supp. at 1359–60 (quoting 3 Nimmer on Copyright § 13.03[A] at 13–21–13–33 (1988)). Because, as discussed above, the elements of the promotional material covered by TXu 423–406 consist almost entirely of nonprotectible concepts and graphic devices, only an automotive advertisement virtually identical to that material could constitute appropriation of protectible elements.[7]

It is clear to the court that defendants' advertisements were not identical to plaintiff's work. Indeed, the court cannot perceive any substantial similarity between the advertisements and the promotional material other than the promotion of automobiles and the phrase "test market pricing." The court therefore finds it equally evident that any

similar response to the works in an ordinary observer would arise "solely from the similarities of the nonprotectible elements of the two works." *Stillman*, 720 F.Supp. at 1360. Accordingly, the court finds, viewing the undisputed facts in the light most favorable to plaintiff, that since plaintiff has failed to establish unlawful appropriation, the court must grant defendants' motion for summary judgment on plaintiff's federal copyright claim.[8]

## B. *Service Mark Claim*

Count II of plaintiff's complaint asserts a federal unfair competition claim, alleging violations of section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).[9] Specifically, Johnson claims that defendants' use of the phrase "test market pricing" in their advertisements infringed on his service mark. For the following reasons, the court must grant defendants' motion as to count II also.

### 1. Eligibility of Plaintiff's Service Mark for Protection

It is undisputed that plaintiff did not own a registered service mark[10] in "test market pricing" as of the dates of the alleged violations of section 43(a) of the Lanham Act.[11]

---

**7.** Defendants have provided an advertisement that serves as a perfect example of the sort of similarity which would constitute unlawful appropriation. The advertisement to which the court refers is the Dominion advertisement appearing in *The Virginian Pilot* newspaper, attached to this memorandum opinion as Figure 3. The format, graphic presentation, and text of that advertisement is virtually identical to Johnson's promotional materials.

**8.** Although neither the parties nor the court specifically addresses the "direct mail letter" covered by TXu 449–564, the court finds that the only similarity between it and defendants' advertisements is the concept of test marketing prices and the phrase "test market pricing."

**9.** Section 43(a) of the Lanham Act provides, in relevant part, as follows:

> Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof ... which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin,

sponsorship, or approval of his or her goods, services, or commercial activities by another person ...
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

**10.** As defined under the Act, a "service mark"

> means any word, name, symbol, or device, or any combination thereof—used by a person ... to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services....

15 U.S.C. § 1127. The court notes that any case law referring to "trademarks" is equally applicable to service marks, since "the terms are often used interchangeably," and they "are entitled to the same legal protection." *Dranoff–Perlstein Assocs. v. Sklar*, 967 F.2d 852, 855 (3d Cir.1992).

**11.** Indeed, as of today's date, the record contains no evidence that Johnson's alleged "test market pricing" mark has been registered. Apparently, plaintiff has initiated the appropriate procedure with the Patent and Trademark Office to obtain registration. Defendants refer to an initial deter-

Section 43(a) "protect[s] against trademark, service mark, and trade name infringement even though the mark or name has not been federally registered." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). *See also Sklar*, 967 F.2d at 855 ("Section 43(a) of the Lanham Act 'extends protection to unregistered trademarks on the principle that unlicensed use of a designation serving the function of a registered mark constitutes a false designation of origin and a false description or representation.'") The issue whether the mark is eligible for protection in such cases, however, "depends upon the market's association between the particular mark and the goods or the business, which, in turn, depends upon the degree of the mark's peculiarity." *Id.*

The required evidentiary showing with respect to the eligibility inquiry depends upon the character of the mark. Courts routinely have classified service marks as falling into one of four categories (listed in increasing order of distinctiveness): (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *See Perini Corp.*, 915 F.2d at 124; *Sklar*, 967 F.2d at 855; *American Television and Communications Corp. v. American Communications and Television, Inc.*, 810 F.2d 1546, 1548 (11th Cir.1987). Generic terms, the common descriptive name for a product or service, are *per se* ineligible for protection. Both suggestive terms, those "requiring an effort of the imagination by the consumer in order to be understood as descriptive," and arbitrary or fanciful terms, those bearing no relation to the product or service, are presumed eligible for protection without further proof. *Perini Corp.*, 915

F.2d at 124; *American Television*, 810 F.2d at 1549. However, where a term is merely descriptive, that is, "identif[ying] a characteristic or quality of an article or service," then eligibility requires "proof of secondary meaning in the marketplace." *Perini Corp.*, 915 F.2d at 125; *American Television*, 810 F.2d at 1548.

■ Defendants first argue that "test market pricing" cannot constitute a service mark, since it is "a designation or slogan imparting an impression of conveying advertising or promotional information rather than of distinguishing or identifying the source of the goods, or services." *Smith v. M & B Sales & Mfg.*, 13 U.S.P.Q.2d 2002, 1990 WL 11112, at *10, 1990 U.S.Dist. LEXIS 1310, at *31 (N.D.Cal. Jan. 31, 1990). *See, e.g., In re Local Trademarks, Inc.*, 220 U.S.P.Q. 728 (T.T.A.B.1983) (refusing registration of the slogan "WHEN IT'S TIME TO ACT," where the applicant's insurance agency clients "would view the slogan ... as a feature of applicant's product and not as a mark identifying and distinguishing the service being rendered by applicant"). Plaintiff counters that he has presented evidence that, unlike the situations in the cases defendants cite,[12] he has "used the mark to identify the named services for which registration is sought." *In re Advertising & Marketing Dev., Inc.*, 821 F.2d 614, 620 (Fed.Cir.1987).

Johnson has presented a letter he allegedly faxed to defendant Duncan:

I am faxing our *"TEST MARKET PRICING" Three–Days–Only* newsprint sales promotion. This promotion will sell new and used cars, trucks, vans, etc.

mination by an attorney assigned to examine Johnson's application. By letter dated February 28, 1994, the attorney refused registration on the grounds that "test market pricing" "does not function as a service mark to identify and distinguish [Johnson's] services from those of others and to indicate their source," that "the proposed mark does not function as a service mark because it is merely informational," and that "[t]he words TEST MARKET PRICING are used merely to inform potential customers that the car dealer is using test market pricing as an incentive to get people to buy cars." Plaintiff cites a more recent determination, dated April 18, 1995, stating that "[t]he mark of the application identified appears to be entitled to registration," and that the Patent and Trademark Office would publish the mark

for the purpose of allowing opposition to its registration. The court is of the opinion that neither of these communications from the Patent and Trademark Office bears on the issues relevant to the instant case, since, as stated, "test market pricing" was not a registered service mark at the time of the alleged violation.

12. The court notes that all of the cases cited by the parties involve questions of the registrability of particular marks. The relevant inquiry in this case is whether section 43(a) entitles plaintiff's concededly unregistered mark to protection. The parties have cited no cases indicating that a mark necessarily must be registrable to qualify for protection under this section.

It is offered to you exclusively in *your market* for *Three Days Only.* Your competition won't have anything close to it. It is STRONG! The price is RIGHT!

In addition, Johnson has submitted declarations of two automotive dealers that they recognize "test market pricing" as identifying a particular source for automotive advertising. The court expresses no opinion as to the registrability of "test market pricing" at the time of the alleged violation. The court finds, however, that plaintiff has presented evidence sufficient to withstand summary judgment on the question whether "test market pricing" constituted a service mark.

■ If "test market pricing" constitutes a service mark at all, however, it could only constitute a descriptive mark, since it merely identifies a characteristic of Johnson's promotional services.[13] The court finds that plaintiff has failed to establish that the mark had acquired the requisite secondary meaning at the time of the alleged violations.[14] The Fourth Circuit Court of Appeals has cited with approval the following factors relevant to whether a party has met the "vigorous evidentiary requirements" as to secondary meaning:

> (1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use.

*Perini Corp.,* 915 F.2d at 125. The record conspicuously lacks any evidence bearing on these factors. The one factor upon which the evidence is undisputed militates strongly in favor of a determination that the service mark could not possibly have acquired a secondary meaning: Plaintiff's alleged mark did not appear in the market until June, 1990; the alleged violations occurred beginning on February 4, 1991, less than a year later. Nor does the evidence cited above concerning Johnson's use of "test market pricing" to identify his services approach the vigorous showing necessary to overcome summary judgment on this issue.

The court holds, therefore, that plaintiff's unregistered mark, to the extent that it constituted a service mark at all, was not eligible for protection under section 43(a).

## 2. Likelihood of Confusion

■ The court feels compelled to recognize that, even if plaintiff's mark were eligible for protection, his Lanham Act claim is nonetheless fundamentally flawed. "The typical § 43(a) Lanham Act claim is brought by a plaintiff *who is in competition with* the defendant, and charges the defendant with using a mark … so similar to that of plaintiff's that the public may be confused as to the source of the good or service." *Advanced Resources Int'l, Inc. v. Tri-Star Petroleum Co.,* 4 F.3d 327, 334 (4th Cir.1993) (emphasis added). Thus, the ultimate issue in determining whether defendants have violated section 43(a) is " 'whether there exists a likelihood that an appreciable number of ordinarily prudent purchasers will be misled, or indeed simply confused as to the source of the goods in question.' " *Perini Corp.,* 915 F.2d at 127 (quoting *Thompson Medical Co. v. Pfizer Inc.,* 753 F.2d 208, 213 (2d Cir.1985) (internal quotation marks and citations omit-

13. "Because a nonregistered mark carries no presumption of validity, the burden of proving the mark arbitrary, suggestive or descriptive lies with the plaintiff." *Sklar,* 967 F.2d at 857 n. 11.

14. The court notes that, in cases of trade dress infringement claims, courts have stated the proposition that " 'evidence of intentional direct copying establishes a *prima facie* case of secondary meaning sufficient to shift the burden of persuasion to the defendant on that issue.' " *Osem Food Indus. Ltd. v. Sherwood Foods, Inc.,* 917 F.2d 161, 163 (4th Cir.1990) (quoting *Kramer,* 783 F.2d at 448). Even if this proposition extends beyond section 43(a) cases involving alleged trade dress infringement, the rationale underlying the rule is absent in this case. Although neither case explicitly addresses this reasoning, the rule must presuppose that a defendant's motivation for the intentional copying is to gain an unfair competitive advantage by appropriating the good will associated with the mark (i.e., the mark's secondary meaning). As discussed below, the defendants in this case used "test market pricing" as part of a campaign to sell automobiles. They would gain no competitive advantage in their trade, automotive sales, vis-a-vis other automotive dealers as a result of any association of the alleged mark with Johnson's services, the licensing of promotional materials. Accordingly, this court need not apply any presumption of secondary meaning in the present case.

ted)). The court may consider the following factors in performing the likelihood of confusion analysis:

> (1) the strength of plaintiff's mark; (2) the degree of similarity between the marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the defendant's intent in adopting the mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers.

*Perini Corp.,* 915 F.2d at 127.

The court must look to these factors, to the extent they are relevant, in light of the principal defect in Johnson's action for federal unfair competition: *He and defendants were not competitors.* Thus, the "proximity of the products" was nil. Defendants' products were automobiles; plaintiff's "product" was an advertising promotion. Similarly, defendants' intent in using the mark was not "to trade on the goodwill or reputation" of Johnson. *See Quality Inns Int'l, Inc. v. McDonald's Corp.,* 695 F.Supp. 198, 221 (D.Md. 1988); *Osem,* 917 F.2d at 165 (holding that the intent of a "newcomer to the market . . . must be to benefit from the goodwill of the competitor's customers by getting them to believe that the new product is either the same, or originates from the same source as the product whose [mark] was copied"). Defendants could not possibly benefit from the goodwill of Johnson's customers. Indeed, Johnson's customers were defendants' competitors. Johnson sold advertising promotions, defendants sold automobiles.

Plaintiff argues that the court cannot resolve the likelihood of confusion issue on summary judgment, since he has presented evidence of actual confusion. Specifically, he cites the declaration of Richard Duffner, president of an automotive dealership located in Montgomery County, Virginia, which states as follows:

> I told Mr. Johnson that if his promotion involved ads which included notices of "TEST MARKET PRICING," he should stop right there and go no further, because we would not be interested in purchasing such a promotion. I told Mr. Johnson that in fact a "TEST MARKET PRICING" newspaper promotion had been run re-

peatedly in the Roanoke newspaper not too long ago; as a result, I told him, I believed that the Roanoke market had been saturated with that promotion, and that Mr. Johnson's promotion therefore would not be an effective promotion at that time. . . . . Mr. Johnson replied that if such a promotion had been run in the Roanoke paper, it had run illegally as the promotion had not been licensed by Mr. Johnson to any dealer in the Roanoke area.

The court is of the opinion that the declaration is not indicative of actual confusion as to the source of any promotion. Rather, it simply explains why Duffner lacked interest in the promotions, that is, the saturation of the market with similar promotions. Duffner and other potential buyers of plaintiff's services were sophisticated customers, none of whom would mistake defendants' advertising of automobiles as designating the source of promotional materials. Plaintiff incurred any harm simply because his services were no longer desirable, not as a result of confusion in the source of those services.

The court holds, as a matter of law, that defendants' use of "test market pricing" entailed no likelihood of confusion as contemplated by section 43(a) of the Lanham Act. The court must therefore grant defendants' motion for summary judgment as to count II of plaintiff's second amended complaint.

### C.  *State Law Claims*

Count III of plaintiff's second amended complaint alleges state common law claims of service mark infringement and unfair competition, invoking this court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Since the court will grant summary judgment as to all of plaintiff's federal claims, the court declines to exercise jurisdiction over the remaining state law claims. Accordingly, the court will dismiss count III of plaintiff's second amended complaint without prejudice.

### III.  *CONCLUSION*

For the reasons stated, the court finds that it must grant defendants' motion for summary judgment as to counts I and II of plaintiff's second amended complaint. The

court will dismiss count III without prejudice. An appropriate order consistent with this memorandum opinion shall be entered this day.

FIGURE 1

# TEST MARKET PRICING SM

★ 3 DAYS ONLY ★

(Day, Month, Date, Hrs., Day, Month, Date, Hrs., Day, Month, Date, Hrs.)
"WE WANT TO TEST HOW LOW WE MUST GO TO SELL 000 NEW & USED CARS, TRUCKS, AND VANS IN THE NEXT 3 DAYS. SO COME GET YOUR BEST DEAL OR BRING US YOUR BEST DEAL <u>TODAY</u>!!!

TXu ___ 423-406

DEALER NAME

ADDRESS & PHONE NUMBER

**PRICE SELLS CARS** SM

1. Test Pricing will only be in effect for 3 days, Month & Dates.
2. All Test Market Prices will be clearly marked on all new & used cars, trucks, & vans.
3. All trade-ins welcome. Extra appraisers will be available for these three days only.

4. Rebates of up to $0,000, finance rates as low as 0.0% APR are available in addition to Test Market Prices on most models.
5. Over $Mil. worth of new & used (Product Name) will be specially Test Price marked.

SM © S.L.D. JOHNSON MAKRETING/ADVERTISING, INC. MCMXC

Johnson Marketing/Advertising, Inc. or Sinclair L.D. Johnson, 1-800-527-3751. This ad is the property of S.L.D. Johnson Marketing/Advertising, Inc. Return to agency or Licensee: _____ Dealer Name

**Proprietary Information**
This ad contains material of a proprietary nature; therefore, all recipients are liable for the unauthorized use of any part thereof without the express written permission of S.L.D.

520

FIGURE 2

## TEST MARKET PRICING

Heritage, Inc., in conjunction with a national lease company, is testing the New River Valley as a market for fleet car disposal.

The following cars are being offered at below market value:

**1988 Ford Tempo**
$4264

**1989 Ford Taurus**
$5966

**1989 Dodge Dynasty**
$5891

**1990 Chevrolet Lumina**
$8794

**1990 Olds Calais**
$7981

**1989 Olds Cutlass CPE**
$7589

## HERITAGE

## TEST MARKET PRICING

Precision Acura, in conjunction with a national lease company, is testing the Roanoke Valley as a market for fleet car disposal.

The following cars are being offered at below market value:

**1989 Olds Ciera**
$5991

**1988 Chevy Caprice**
$5991

**1989 Ford Taurus Wagon**
$5991

**1988 Dodge Dynasty**
$5991

**1988 Dodge**
$6991

**1988 Chrysler LeBaron**
$4991

522

FIGURE 3

# TEST MARKET PRICING*

## ★ 3 DAYS ONLY ★

### Fri. June 29, Sat. June 30, and Mon. July 2

*WE WANT TO TEST HOW LOW WE MUST GO TO SELL NEW & USED CARS OR MINI-VANS IN THE NEXT 3 DAYS. SO COME GET YOUR BEST DEAL OR BRING US YOUR BEST DEAL TODAY!!!!

### ◆ Dominion ◆
### CHRYSLER-PLYMOUTH

4421 Virginia Beach Blvd. 1 Block East of Pembroke Mall

## 499-2300

**PRICE SELL CARS**

1. Test Pricing will only be in effect for 3 days, June 29, 30 & July 2

2. All Test Market Prices will be clearly marked on all new & used cars & mini-vans.

3. All trade-ins welcome. Extra appraisers will be available for these three days.

4. Rebate of up to $2000, finance rates as low as 2.9% APR are available in addition to Test Market Prices on most models.

5. Over $3,000,000 worth of new & used cars or mini-vans will be specially Test Price marked.

## *ORDER*

In accordance with the memorandum opinion filed this day, it is

### ADJUDGED AND ORDERED

(1) that defendants' motion for summary judgment is **GRANTED** as to counts I and II of plaintiff's second amended complaint, and

(2) that count III of plaintiff's second amended complaint is dismissed without prejudice.

It is **FURTHER ORDERED**, on motion of counsel for defendants, that defendants' counterclaim is dismissed without prejudice.

The Clerk of Court shall strike the case from the Court's active docket and is directed to send certified copies of this order to all counsel of record.